155 So. 225

## BOARD OF COM'RS OF PORT OF NEW ORLEANS v. SEWERAGE AND WATER BOARD OF NEW ORLEANS.

### No. 32904.

April 23, 1934.

Rehearing Denied May 21, 1934.

Harold A. Moise, of New Orleans, for appellant.

Gus A. Llambias, Sp. Counsel, of New Orleans, for appellee.

OVERTON, Justice.

This is a suit brought by plaintiff against the sewerage and water board of New Orleans to recover the sum of $12,283.43, alleged to be due for repairs to a siphon constructed by plaintiff during the building of the Industrial Canal. The purpose of the suit seems to be not only to recover the aforesaid sum, but to determine whether plaintiff or defendant is responsible for the maintenance of the siphon.

The Industrial Canal was constructed under Act No. 244 of 1914, which became an amendment to the Constitution of 1913. The act directed the plaintiff herein, which is an

agency of the state, in charge of the port of New Orleans, to dig, build, erect, and operate a navigation canal in the city of New Orleans from the Mississippi river to Lake Pontchartrain, in aid of commerce. Section 1 of Act No. 244 of 1914. The act requires that the commission council of the city of New Orleans locate the canal. The council did so, by an ordinance, defining with precision the route of the canal. This ordinance routes it through the lower part of New Orleans. The act also required that the plans and specifications for the canal be approved by defendant and certain other political bodies.

The plans for the canal were not formally approved, but the evidence leaves no doubt that, after numerous consultations with the contractors, Goethals & Co., through the engineer in charge, George M. Wells, and after changes made to comply with the demands of defendant, defendant impliedly and informally accepted the plans as all-sufficient, and that the other political bodies in like manner accepted them.

The route designated by the commission council required that the canal cross another one, known as the Florida Avenue Drainage Canal, one of the important drainage canals of the city. To accomplish this, and permit the drainage of the city to continue through the Florida Canal, it was necessary to tunnel under the Industrial Canal and to inclose the tunnel in a strong concrete structure and to pump the water through. This structure is called the siphon.

The work of constructing the canal was begun in 1918, a few months before the termination of the World War, and was completed in 1920. It has been in use ever since.

The siphon cost $707,500.42, and was paid for by plaintiff, whether due by it or not. At or about the time of its completion, leaks were observed in the structure. These were repaired and paid for by the plaintiff. No further trouble was experienced with the siphon until some eight years later, when some time in 1928, it was noticed that water from some source was bubbling up or spouting up alongside of the siphon. On investigation, it was found that the siphon had sprung a leak and that water was entering it from the navigation canal, thus adding to the expense and difficulty of pumping the water through the siphon.

When these leaks appeared, it became necessary to repair them in some way. After considerable discussion and correspondence between plaintiff and defendant, it was finally agreed that plaintiff should do the work of repair, and, upon its completion, that a friendly, though serious, suit should be brought to determine upon which one of the two rested the burden of keeping the siphon in repair. This suit is the one contemplated by the agreement.

The duties of plaintiff, under the law, are (1) to take charge of and administer public wharves; (2) to construct new wharves; (3) to protect merchandise in transit; (4) to keep wharves, sheds, and approaches in good condition; (5) to maintain sufficient depths of water; (6) to provide for lighting and policing wharves; and (7) to defray the expenses of doing the things to place charges upon the shipping visiting the port. Section 2 of

Act No. 70 of 1896. To these duties there may be added the specific authority vested in plaintiff by the constitutional amendment, contained in Act No. 244 of 1914, "to dig, build, erect and operate or acquire and operate a navigation canal in the city of New Orleans, together with necessary locks, slips, laterals, basins and appurtenances thereof, and other structures necessary therefor, to connect Lake Pontchartrain and the Mississippi River, in aid of commerce." Section 1.

We find nothing here that imposes upon plaintiff the obligation of keeping in repair any part of the drainage system of the city of New Orleans, nor do we find any such duty imposed elsewhere in the statutes and Constitution of this state.

There is some evidence which might possibly bring into play other laws, tending to show that the leaks are due to imperfect construction of the siphon, but the evidence is by no means clear that such is their cause, nor does their cause satisfactorily appear, but is rather conjectural. The trouble, it is urged, is due to the fact that the concrete walls of the siphon, called apron walls, were not built sufficiently strong to withstand the pressure of the water, but the evidence, whatever may be the legal effect of this position, does not satisfactorily establish any such hypothesis. Therefore the position amounts to naught.

It is the duty of the defendant to maintain the drainage of the city. Plaintiff did all it was called upon by law to do when it provided for the continuance of the drainage. Thereafter it became defendant's duty to maintain the drainage of the city, by keeping the siphon in repair. Hence defendant should bear the costs of repairs, especially as the leaks did not occur until eight years after the acceptance of the work.

The suit includes a claim, as part of the expense of making the repairs, for damages done the dredge Lafourche, which was repaired by plaintiff at a cost of $5,054.28. It seems that, in repairing the leaks, a barge was used to carry dirt. In unloading the dirt from the barge, it capsized and fell on the dredge Lafourche, sinking the dredge and damaging it as well as the barge. The accident was caused by the negligence of plaintiff's employees in unloading the barge. Too much dirt was removed from one side, which unbalanced the barge and caused it to capsize. For this negligence plaintiff is responsible and cannot justly look to defendant for the cost occasioned by its own negligence. Therefore this cost should be deducted from the amount sued for, leaving a balance due of $6,471, for which judgment will be rendered against defendant.

For these reasons, the judgment, appealed from, is set aside, and judgment is now rendered in favor of plaintiff and against defendant for said sum of $6,471, with 5 per cent. yearly interest thereon from March 1, 1930, until paid and for all costs of suit.

ROGERS, J., dissents.

ST. PAUL, J., absent.

O'NIELL, Chief Justice (dissenting).

The cost, of $6,471, which the board of commissioners of the port of New Orleans is undertaking to impose upon the sewerage and water board, was incurred for repairing

a leak in the apron wall on top of the so-called siphon, which was constructed by the board of commissioners of the port of New Orleans in order to construct the navigation canal across the Florida Avenue Drainage Canal. It appears to me that the members of the court who subscribe to the prevailing opinion in this case overlook the fact that the wall which separates the water in the navigation canal from the water in the drainage canal, and the so-called apron walls of the canal, over the siphon, are necessary appurtenances of the navigation canal, not of the drainage canal. There was no need for a siphon or apron walls except for the purpose of digging and construction of the navigation canal across the drainage canal. The fact that the board of commissioners of the port of New Orleans constructed the siphon and its apron walls, and paid the enormous cost of $707,500.42 without any thought of asking for reimbursement or contribution from the sewerage and water board, shows how the two boards construed the provisions of Act No. 3 of 1918, with regard to their obligations, respectively.

It may be conceded, for the sake of argument, that the sewerage and water board should bear the cost of making repairs to any part of the siphon that does not affect the retaining of the water in the navigation canal. But it is certainly the duty of the board of commissioners of the port of New Orleans—and is not the duty of the sewerage and water board—to maintain the walls which retain the water in the navigation canal and prevent its flowing into the city or the city's drainage system. The overhead wall, or ceiling, so to speak, of the siphon which the board of commissioners of the port of New Orleans constructed, in order to cross the drainage canal, is the bottom of the navigation canal itself, and the apron walls, where the leak is, are the walls of the navigation canal itself. There is no more reason why the sewerage and water board should maintain these walls, which keep the water in the navigation canal, than there would be for demanding that the sewerage and water board should repair the wall or embankment of the navigation canal anywhere else where it might spring a leak and let the water flow into the city or into the city's drainage system.

The question as to which one of the two political corporations shall pay the debt in this case is a matter of very little importance; but, if the prevailing opinion in the case is correct, the board of commissioners of the port of New Orleans may, literally and not figuratively speaking, let the bottom drop out of the navigation canal unless the sewerage and water board sees fit to prevent it. And, if such a calamity should occur, involving a loss of $707,500.42, it would put the sewerage and water board out of business. There is no more reason for requiring the sewerage and water board to maintain the retaining walls of the navigation canal over the drainage canal than there would have been for requiring the sewerage and water board to build the retaining walls of the navigation canal originally.